**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MORSE STEWART; JEANINE STEWART,
*Plaintiffs-Appellants,*

v.

UNITED STATES OF AMERICA,
*Defendant-Appellee.*

No. 05-36112

D.C. No.
CV-05-00194-
GMK/DCA

OPINION

Appeal from the United States District Court
for the District of Oregon
Garr M. King, District Judge, Presiding

Argued and Submitted
Submitted December 6, 2007*
Portland, Oregon

Filed January 15, 2008

Before: Diarmuid F. O'Scannlain, Susan P. Graber, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge O'Scannlain

---

*This panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

## **COUNSEL**

Morse and Jeanine Stewart, Vernonia, Oregon, filed briefs *pro se* as plaintiffs-appellants.

Karen G. Gregory, Attorney, Tax Division, United States Department of Justice, Washington, DC, filed a brief for the

defendant-appellee; Frank P. Cihlar, Attorney, Tax Division, United States Department of Justice, Washington, DC, Eileen J. O'Connor, Assistant Attorney General, Tax Division, United States Department of Justice, Washington, DC, and Karin J. Immergut, United States Attorney, Portland, Oregon, were on the brief.

## OPINION

O'SCANNLAIN, Circuit Judge:

We are called upon to determine whether a person who is not identified in an Internal Revenue Service administrative summons issued to a third party has standing to file a petition to quash.

I

Sometime in 2005, the Internal Revenue Service ("IRS") commenced an investigation of Morse Stewart's income tax liabilities for the tax years 1998 through 2003. In furtherance of that investigation, Revenue Agent Carla J. Oyala issued administrative summonses to fifteen banks and mortgage companies seeking information regarding Morse's financial accounts and transactions. Morse's accounts at these entities were jointly held with his wife Jeanine Stewart. Three of the summonses issued by the IRS identified both Morse and Jeanine as subjects of the investigation. The remaining twelve summonses identified Morse alone.

On February 8, 2005, Morse and Jeanine filed a *pro se* petition in the district court to quash the summonses pursuant to 26 U.S.C. § 7609(b)(2). The government conceded to quashing the three summonses that identified Jeanine insofar as they related to her because Jeanine was not a subject of the IRS's investigation. The district court then dismissed the

remainder of the petition insofar as it related to Jeanine, concluding that she lacked standing under § 7609(b)(2) to petition to quash the twelve summonses in which she was not identified. The district court denied Morse's petition in its entirety, concluding that the government had made a prima facie showing that the summonses were issued in good faith, which Morse failed to rebut.

Morse and Jeanine appeal.

## II

**[1]** We begin with Jeanine's petition to quash the twelve summonses which did not identify her. Section 7609(b)(2) of the Internal Revenue Code (the "Code") instructs that any person entitled to notice of an IRS administrative summons's issuance to a third party has standing to challenge the validity of that summons. Specifically, it provides that "any person *who is entitled to notice* of a summons under subsection (a) shall have the right to begin a proceeding to quash such summons . . . in the manner provided in subsection (a)(2)." 26 U.S.C. § 7609(b)(2)(A) (emphasis added).

**[2]** Thus, at the statute's instruction, we turn to § 7609(a) for the definition of persons entitled to notice. That section provides as follows:

> If any summons to which this section applies requires the giving of testimony on or relating to, the production of any portion of records made or kept on or relating to . . . *any person* (other than the person summoned) who is *identified in the summons, then notice of the summons shall be given to any person so identified* within 3 days of the day on which such service is made, but no later than the 23rd day before the day fixed in the summons as the day upon which such records are to be examined.

*Id.* § 7609(a)(1) (emphasis added). This provision expressly states that only those persons identified in a summons are entitled to notice of its issuance. Accordingly, under the plain meaning of § 7609(b)(2), only those persons so identified have standing to petition to quash. *See Vanguard Int'l Mfg., Inc. v. United States*, 588 F. Supp. 1229, 1232 (S.D. N.Y. 1984) (holding that a corporation not identified in an IRS summons lacked standing under § 7609(b)(2) to challenge the summons's validity even though the summons sought records relating to a taxpayer who had signatory authority over the corporation's bank accounts); *Voss v. United States*, 573 F. Supp. 957, 960-61 (D. Colo. 1983) (concluding that a joint owner of a bank account not identified in an IRS summons lacked standing under § 7609(b)(2) to challenge the summons's validity even though it identified her husband, the other joint owner).

**[3]** We note that our interpretation accords with that adopted by the Second Circuit in *United States v. First Bank*, 737 F.2d 269 (2d Cir. 1984). In that case, the court determined that the plain text of § 7609(a)(1) combined with its inconclusive legislative history compelled the interpretation that "a co-owner of a joint bank account who is not identified in the summons is not entitled to notice when an administrative summons is served on a third-party recordkeeper." *Id.* at 271. Recognizing that such an interpretation would deny the joint owner of a bank account the right to notice of a summons pertaining to that account unless such owner is identified in the summons, the court in *First Bank* concluded that "this possibility was not thought by Congress to create a sufficient infringement to warrant the inclusion of additional statutory notice requirements for unidentified persons," and that Congress's decision was "reasonable." *Id.* at 274.

We are persuaded by the Second Circuit's view. As the court in *First Bank* explained, when a taxpayer places her records in the hands of a third-party recordkeeper, there are several situations in which the taxpayer's records may be dis-

closed to other parties, such as the recordkeeper's certified public accountant or a federal regulatory agency, without notice to the taxpayer. *Id.* (quoting *United States v. Gottlieb*, 712 F.2d 1363, 1369 (11th Cir. 1983)). In light of this reality, we believe it was reasonable for Congress to limit the statutory right to notice of a summons's issuance and the statutory right to petition to quash to those persons identified in the summons itself.

**[4]** The twelve summonses which Jeanine petitions to quash identify Morse alone. As a consequence, Jeanine was not entitled to notice of the summonses' issuance under § 7609(a)(1) and, as such, she lacked standing to petition to quash the summonses under the plain meaning of § 7609(b)(2). Accordingly, we conclude that the district court properly dismissed the petition to quash as it related to Jeanine for lack of jurisdiction.

## III

We next turn to Morse's petition to quash the summonses as they related to him. Morse contends that the summonses are defective and unenforceable because the IRS did not strictly adhere to the procedures required by the Code for the issuance of summonses.

The Code empowers the Commissioner of the IRS to make "inquiries, determinations, and assessments of all taxes." 26 U.S.C. § 6201(a). In the exercise of that power, the Code authorizes the Commissioner to issue summonses ordering that any person appear, produce documents, or give testimony relevant to an IRS investigation. *Id.* § 7602(a). The Supreme Court has made clear that this summons power must be construed broadly. *See United States v. Arthur Young & Co.*, 465 U.S. 805, 816-17 (1984). Nevertheless, when the IRS summons information relating to a person's records held by a third-party recordkeeper, it must comply with specific procedures outlined in the Code. *See* 26 U.S.C. § 7609(a)(1)-(3).

A

**[5]** In *Powell v. United States*, 379 U.S. 48 (1964), the Supreme Court held that when a party petitions to quash an IRS summons, the IRS must make a prima facie showing that the summons was issued in good faith. *Id.* at 57-58. Specifically, the IRS must establish that the summons (1) was issued pursuant to a "legitimate purpose"; (2) seeks information "relevant" to that purpose; (3) seeks information that is "not already within the Commissioner's possession"; and (4) satisfies all "administrative steps required by the Code." *Id.*

**[6]** As this court explained in *Fortney v. United States*, 59 F.3d 117 (9th Cir. 1995), the government's burden under *Powell* "is 'a slight one' and typically is satisfied by the introduction of a sworn declaration of the revenue agent who issued the summons that the *Powell* requirements have been met." *Id.* at 120 (citing *United States v. Dynavac, Inc.*, 6 F.3d 1407, 1414 (9th Cir. 1993); *United States v. Gilleran*, 992 F.2d 232, 233 (9th Cir. 1993)).

**[7]** Morse argues that the government failed to satisfy *Powell*'s fourth requirement because Revenue Agent Oyala's sworn declaration failed to state with particularity which of the required administrative steps the IRS complied with in issuing the summonses. Yet *Powell* contains no such particularity requirement. Agent Oyala's declaration avers that "all administrative procedures required by the Internal Revenue Code for issuance and service of the summons have been followed." Under our precedent, such an averment is sufficient to satisfy the government's slight burden under *Powell*'s fourth requirement. *See Dynavac*, 6 F.3d at 1414 (concluding that the IRS had met its burden where the investigating agent stated that he "had adhered to all the requisite administrative steps"); *see also United States v. Kis*, 658 F.2d at 526, 536 & n.28 (7th Cir. 1981) (concluding that an affidavit stipulating that "the administrative steps required" were followed met the *Powell* requirements and that "[n]o more than that is neces-

sary to make the prima facie case"). Thus, based on this record, we conclude that Agent Oyala's sworn declaration was sufficient to establish the government's prima facie case that the summonses were issued in good faith.

### B

With the IRS's prima facie case established, the burden shifts to Morse to rebut the government's claim. As we have previously explained, "[o]nce a prima facie case is made a 'heavy' burden is placed on the taxpayer to show an 'abuse of process' or 'the lack of institutional good faith.' " *Fortney*, 59 F.3d at 120 (quoting *Dynavac*, 6 F.3d at 1414). Despite the weight of this burden, however, upon "a sufficient showing of bad faith on the Government's part, the taxpayer is entitled to a limited evidentiary hearing." *United States v. Samuels, Kramer, & Co.*, 712 F.2d 1342, 1347 (9th Cir. 1983).

[8] On appeal, Morse offers no evidence in rebuttal to the government's prima facie case that the summonses were issued in good faith. Rather, Morse's claim focuses exclusively on the alleged insufficiency of Agent Oyala's averment that all administrative steps required by the Code had been complied with. Having determined that this argument is unavailing, we conclude that the district court did not err in denying Morse's petition.

### IV

Based on the foregoing, the district court's decision to dismiss the petition as it relates to Jeanine for lack of jurisdiction and to deny the petition as it relates to Morse is

**AFFIRMED.**[1]

---

[1]The government's motion to strike Appellants' "Informal Written Argument in Lue [sic] of Oral Argument" is denied as moot.